IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THOMAS H., )
)
        Plaintiff, )
)
v. ) 1:22CV876
)
MARTIN J. O'MALLEY,[1] )
Commissioner of Social Security, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Thomas H. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on May 28, 2021, alleging a disability onset date of April 8, 2021. (Tr. at 15, 145-52.)[2] Plaintiff's application was denied initially (Tr. 61-68, 85-89) and upon reconsideration (Tr. at 69-79, 91-95). Thereafter, Plaintiff requested

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 96-97.) On June 8, 2022, Plaintiff, along with his non-attorney representative, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15, 37-60.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and on August 10, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of April 8, 2021. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> obstructive sleep apnea (OSA); clinical insomnia; hypertension; plantar fasciitis; back pain; coronary artery disease; anxiety; major depressive disorder[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work with additional, non-exertional limitations, including

> frequent climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.

5

(Tr. at 23-24.) The ALJ further determined that, in terms of mental limitations,

> [Plaintiff] is able to understand and perform simple, routine, repetitive tasks, and maintain concentration, persistence, and pace to stay on task for 2-hour periods during a typical 8-hour workday with normal breaks. He requires a low-stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work; rather, he requires a goal-oriented job.

(Tr. at 24.) At step four of the analysis, the ALJ found, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform his past relevant work. (Tr. at 29.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 30-31.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now contends that the ALJ erred at step two of the analysis by failing to identify his headaches and chronic sinusitis as severe impairments, specifically that the ALJ "erred by failing to evaluate Plaintiff's chronic sinusitis status post-surgery and recurrent headaches when assessing his severe impairments and work-related limitations." (Pl.'s Br. [Doc. #10] at 4.) As an initial matter, the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations

omitted).[5] However, in the present case, Plaintiff contends that the ALJ's subsequent analysis also failed to account for effects of his sinus issues and headaches on his abilities to stay on task and avoid excessive work absences. (Pl.'s Br. at 5.)

Notably, the ALJ did not address Plaintiff's headaches or chronic sinusitis at all in assessing Plaintiff's impairments; they are not listed as severe impairments, but they are also not addressed and determined to be non-severe impairments. The subsequent analysis likewise fails to include any analysis regarding Plaintiff's headaches or chronic sinusitis, despite the fact that Plaintiff repeatedly raised his headaches and chronic sinusitis as the basis for his disability claim. In this regard, Plaintiff's application includes headaches/migraines and chronic sinus infections as two of the medical conditions that limit his ability to work. (Tr. at 182.) The state agency physicians recognized headaches/migraines and chronic sinus infections as claimed impairments. (Tr. at 62-64, 70-75.) Plaintiff also submitted his disability determination by the Veteran's Administration, which reflects a 30% disability rating for his headaches and a 30% disability rating for his chronic sinus infections. (Tr. at 166.) The

---

[5] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. August 22, 2013).

medical records reflect that Plaintiff had sinus surgery in 2017 (Tr. at 394), and sought treatment for his ongoing sinus headaches/headaches/sinusitis in May 2020 (Tr. at 308-10) ("Chief complaint: Has been having sinus fullness and not feeling well . . . Has been feeling sinus headaches and feeling head is full" with tender sinuses on exam), September 2020 (Tr. at 277) (telehealth visit for coronary disease/anxiety/chronic sinusitis/sleep apnea), February 2021 (Tr. at 301-03) (complaints for nasal and sinus congestion, with tenderness on exam and assessment of recurrent sinusitis), and then during the relevant period at issue in this case: on May 2021 (Tr. at 268-69) (complains of "constant headache, unable to concentrate on things"), May 2021 (Tr. at 352) ("wakes up with morning headache"), June 2021 (Tr. at 298-300) ("Chief complaint: Chronic Sinus infection, headaches, sleep insomnia . . . Carries h[istory] of ch[ronic] sinusitis with recurrence. Had multiple sinus s[urgeries] in past. Now has increasing facial pressure with heaviness over frontal and maxillary areas," with maxillary and frontal tenderness noted on exam), November 2021 (Tr. at 433-35) ("Chief complaint: sinus infection" with frontal and ethmoidal tenderness noted on examination), January 2022 (Tr. at 429-31) ("Chief complaint: sinus infection" with maxillary tenderness on examination and an assessment of "[c]hronic sinusitis"), and February 2022 (Tr. at 425) (on wellness exam, reporting "chronic sinus congestion with recurrent sinusitis"). Plaintiff in his testimony, when asked to identify the impairments that keep him from working, identified insomnia and headaches, and when pressed further identified high blood pressure, stress, anxiety, continuous sinus infections, headaches, and breathing issues. (Tr. at 43.) In recounting Plaintiff's subjective complaints and testimony, the ALJ wrote, in pertinent part, as follows:

> [Plaintiff] testified that he had to stop working mainly due to chronic insomnia, difficulty concentrating, abnormal blood pressure, anxiety, headaches, breathing

8

> issues, sinus infections, and lower back pain. Due to sleep issues, his mind never shuts off, and he is always thinking about things. His concentration and focus are limited, further causing difficulty completing more than one complex task at a time. He tends to lose interest in things after a certain period. He was initially diagnosed with sleep apnea but when he did another sleep study after losing weight, it was determined he no longer had sleep apnea. However, he is constantly tired and has to take a nap for an hour or two, twice a day and still gets headaches about three times a week in the front part of the head. He typically has to lie down in a dark place to relax. He still has breathing issues and does not have full lung capacity, which causes him to have to stop and rest when doing things. The claimant stated that he has a history of two stents placed in the left artery and continues to take medication for heart maintenance and blood pressure, which causes him to urinate a lot. His blood pressure fluctuates depending on what he is doing. He has foot pain that shoots into the leg when standing too long and has lower back pain that radiates down both legs. He uses Aleve and muscle relaxers for pain. The claimant asserted that his biggest limitations include inability to carry over 15 to 20 pounds, difficulty sitting over 30 to 45 minutes, standing over 30 minutes, and walking over 100 yards (which causes shortness of breath and increased pain). On a typical day, he stays home and maintains a small garden (no longer than 10 minutes a day) and watches television.

(Tr. at 24-25.) At the hearing, the ALJ also asked Plaintiff how often he experienced headaches, Plaintiff responded, "I don't know, maybe three times a week." (Tr. at 46.) Plaintiff later testified, in pertinent part, as follows:

> I just get [headaches] and go somewhere in the dark, sit down and, you know, just kind of relax for . . . a half hour, 45 minutes . . . . I can't really take, you know, anything . . . because [of] a past G.I. break in my stomach. So I have to be really careful with medications. And it's just difficult, you know, to even think with the headache because of the pressure.

(Tr. at 46.) Thus, the ALJ covered these impairments with Plaintiff during the hearing and included them in the narrative summary of Plaintiff's testimony. However, the ALJ did not assess whether Plaintiff's headaches or chronic sinusitis were severe impairments at step two, so it is not clear whether the ALJ found them to be non-severe impairments. In addition, as noted above, the ALJ failed to otherwise address or include Plaintiff's headaches or sinusitis

9

in analyzing the record and setting the RFC, so there is no way to follow the ALJ's analysis as to these impairments.

Defendant contends that Plaintiff's headaches and sinusitis raise only concentration-related limitations and are therefore sufficiently addressed in the RFC. (Def.'s Br. [Doc. #11] at 13.) As set out above, the ALJ ultimately included several concentration-related limitations in the RFC assessment. In particular, the ALJ determined that Plaintiff could perform simple, routine, repetitive tasks with further restrictions to "maintain[ing] concentration, persistence, and pace [sufficient] to stay on task for 2-hour periods during a typical 8-hour workday with normal breaks." (Tr. at 24.) The ALJ also limited Plaintiff to a "low-stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work." (Tr. at 24.) However, the ALJ made no connection between these restrictions and Plaintiff's headaches or sinus symptoms. In fact, the ALJ failed to discuss Plaintiff's headaches or sinus problems at all, other than mentioning them among Plaintiff's alleged impairments. As reiterated by the Fourth Circuit in Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." With regard to the first component, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work." Id. (emphasis added) (internal brackets and quotation omitted). With regard to the second component, "the ALJ must provide a narrative discussion describing how the evidence supports each conclusion." Id. (internal quotation omitted). With regard to the third component, "[o]nce the ALJ has completed th[e] function-by function analysis, the ALJ can

10

make a finding as to the claimant's RFC." Id. Significantly, Thomas specifies that "[t]he second component, the ALJ's logical explanation, is just as important as the other two." Id. "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Id. Here, the ALJ provided no explanation as to whether or how the RFC accounts for Plaintiff's headaches and sinus impairment. Accordingly, the Court cannot discern whether the ALJ adequately addressed the impact of these impairments in the present RFC.

Defendant also contends that Plaintiff has failed to identify any functional limitations resulting from his headaches or chronic sinus infections that are not already accounted for in the RFC. However, Plaintiff points to the ALJ's failure to specifically address the impact of Plaintiff's headaches and sinus impairment on his need for absences and/or breaks. Again, Plaintiff testified that he experiences headaches about three times per week and needs to rest for 30-45 minutes in the dark when these headaches occur. In this case, the vocational expert specifically testified that (1) the need for more than one absence per month or (2) the need for an additional 30-minute break during the workday would preclude all work at step five of the sequential analysis. (Tr. at 56-58.) In a recent, unpublished opinion, the Fourth Circuit held that such testimony, when unaddressed by the ALJ, requires remand. See Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (holding that "the ALJ erred by not making specific findings regarding how often [the plaintiff] would be absent from work due to the frequency and severity of her headaches" where the "vocational expert testified a hypothetical person would be precluded from maintaining full time employment if she were absent more than once a month" and the record showed that, "even after receiving treatment

11

that reduced the frequency of her headaches, [the plaintiff] still reported getting headaches about once a week"). Because the ALJ in the present case, as in Woody, failed to assess the impact of Plaintiff's headaches in a manner that permits meaningful judicial review, remand is necessary.[6]

In reaching this conclusion, the Court notes that the evidence cited above would not necessarily establish disability, and it may be that any limitations resulting from Plaintiff's headaches and chronic sinusitis are sufficiently addressed in the RFC as written. However, because the ALJ did not address these impairments or include any analysis at all as to their impact on Plaintiff's ability to work, remand is necessary so that the ALJ can make this determination in the first instance.[7]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Plaintiff's claim. Defendant's Dispositive Brief [Doc. #11] is DENIED, and Plaintiff's Dispositive Brief [Doc. #10] is GRANTED to the extent

---

[6] The Court also notes that the ALJ discounted Plaintiff's claims regarding sleep apnea because he was "not adherent to CPAP therapy due to sinus issues." (Tr. at 25.) However, to the extent the ALJ concluded that Plaintiff failed to comply with treatment for sleep apnea, the records reflect that this failure was due to Plaintiff chronic sinusitis that never got better even after surgery. (Tr. at 421.) The failure to address Plaintiff's sinusitis as an impairment thus also impacts the way the ALJ evaluated Plaintiff's failure to comply with recommended CPAP treatment for his sleep apnea.

[7] The Court notes that the ALJ's decision otherwise addresses Plaintiff's claims fully and relies on substantial evidence regarding Plaintiff's abilities. In the circumstances, the Court has considered whether the failure to address Plaintiff's headaches and chronic sinusitis could be considered harmless. However, the Court cannot provide an analysis that the ALJ did not, and given that these alleged impairments were a primary basis for Plaintiff's claims, it is for the ALJ to address and resolve these issues in the first instance.

set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, his Motion is DENIED.

This, the 29th day of March, 2024.

/s/ Joi Elizabeth Peake<br>United States Magistrate Judge